This appeal is dismissed for lack of jurisdiction.

**DISMISSED.**

PHOENIX NEWSPAPERS, INC.,
Plaintiff–Appellant,

v.

PHOENIX MAILERS UNION LOCAL 752, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendant–Appellee.

No. 91–16459.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 19, 1992.

Decided March 24, 1993.

Marshall W. Anstandig, Bryan, Cave, McPheeters & McRoberts, Phoenix, AZ, for plaintiff-appellant.

Michael J. Keenan, Phoenix, AZ, for defendant-appellee.

Before: WIGGINS, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Phoenix Newspapers, Inc. ("PNI") appeals the district court's grant of summary judgment and award of attorneys' fees in favor of Phoenix Mailers Union Local 752 ("the Union"). PNI filed a complaint in district court to vacate an arbitration award and moved for summary judgment. The Union filed a cross-motion for summary judgment, seeking enforcement of the arbitration award and attorneys' fees. The district court found that PNI made essentially three arguments: (1) the dispute was not arbitrable, (2) the arbitration award was not valid because it did not draw its essence from the collective bargaining agreement ("Agreement"), and (3) the arbitrator's remedy exceeded his authority. The district court granted the Union's motion for summary judgment and awarded fees. PNI appeals.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, and reverse in part.

## BACKGROUND

PNI and the Union are parties to a collective bargaining agreement that governs the wages, hours, and working conditions of PNI's mailroom employees. A dispute arose when PNI unilaterally implemented manning changes for the Sheridan, an inserting machine. The Union filed a grievance, claiming that PNI's manning changes violated the Agreement and past practice. Soon after, the Union filed a charge with the National Labor Relations Board ("NLRB"), alleging a violation of section 8(a)(5) of the National Labor Relations Act ("NLRA"). The NLRB deferred action pending arbitration of the dispute.

The arbitrator found that the dispute was arbitrable, that PNI violated sections 2 and 32 of the Agreement, and that PNI violated sections 8(a)(5) and 8(d) of the NLRA. The arbitrator concluded that the employees, who bore a greater work load as a result of PNI's manning changes, were entitled to increased compensation. He gave the parties sixty days to reach a new wage rate that would compensate for the effects of the manning changes. If the parties were unable to reach an agreement during that time, the arbitrator indicated he would determine the appropriate level of compensation.

## DISCUSSION

■ PNI appeals the district court's order, alleging that the dispute was not arbitrable, that the award did not draw its essence from the Agreement, that the arbitrator did not have authority to hear the unfair labor practice charge, and that the arbitrator's remedy exceeded his authority. PNI also appeals the district court's award of attorneys' fees. We affirm the district court's findings that the dispute was arbitrable and that the award drew its essence from the Agreement. We reverse the district court's finding that the remedy was within the arbitrator's power and the award of attorneys' fees. Based on the record before us, we cannot determine whether the unfair labor practice charge was properly decided by the arbitrator.[1]

---

1. Pre-arbitral deferral by the NLRB of the unfair labor practice charge alone did not give the arbitrator the power to decide that statutory claim. *See Challenger Caribbean Corp. v. Union* *Gen. de Trabajadores,* 903 F.2d 857, 865–66 (1st Cir.1990). The parties had to confer that authority either through the Agreement or their submissions to the arbitrator. *See id.; Collyer*

## I. Standards of Review.

■ In the *Steelworkers Trilogy*,[2] the Supreme Court declared that public policy favors the resolution of labor disputes through arbitration. Accordingly, judicial review of arbitration awards is extremely limited. *Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1204 (9th Cir.1989) (en banc), *cert. denied*, 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990). An arbitration award must be enforced if on its face it represents a plausible interpretation of the contract. *George Day Const. Co. v. United Bhd. of Carpenters and Joiners, Local 354*, 722 F.2d 1471, 1477 (9th Cir.1984).

■ Federal courts should not review the merits of arbitration awards, but rather should merely determine whether the parties agreed to arbitrate the dispute and to give the arbitrator the power to provide for his award. *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. A reviewing court should only determine whether the arbitrator is dispensing "his own brand of industrial justice," assuring itself that the award "draws its essence from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361. A reviewing court is "bound—under all except the most limited circumstances—to defer to the decision of [the arbitrator], even if ... that ... decision finds the facts and states the law erroneously." *Stead Motors*, 886 F.2d at 1204.

## II. The Dispute was Arbitrable.

■ There is a strong presumption in favor of arbitrability. *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53.

This presumption is strengthened when the arbitration agreement contains broad language. *Id.* at 585, 80 S.Ct. at 1354. The party contesting arbitrability bears the burden of demonstrating how the language in the collective bargaining agreement excludes a particular dispute from arbitration. "In the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 584–85, 80 S.Ct. at 1353–54.

■ Here, no provision of the Agreement excludes manning disputes from arbitration. On the contrary, the broad language of the Agreement compels a finding of arbitrability. *See id.* at 585, 80 S.Ct. at 1354. In section 11,[3] the parties agreed to submit *all* disputes over the interpretation and application of *any* clause of the Agreement to arbitration and did not provide for a specific exception that covers this dispute. PNI has failed to produce forceful evidence sufficient to override the presumption of arbitrability.

PNI incorrectly contends that the doctrine of "management rights" shields this dispute from arbitration. *See Teamsters Union Local 287 v. Frito–Lay, Inc.*, 849 F.2d 1210, 1213 (9th Cir.1988). The Agreement did not include a "management rights" clause explicitly granting PNI exclusive powers. Although PNI did retain the right as a matter of past practice to make manning changes, it still had an obligation to negotiate over the effects of such changes when, as in this case, they resulted in substantial changes in working conditions. Again, PNI has failed to provide

Insulated Wire, 192 NLRB 837 (1971). Because it is impossible to determine from the record that was before the district court whether PNI consented to the arbitration of the unfair labor practice charge, we vacate the portion of the district court's opinion upholding the arbitrator's disposition of that claim. We affirm the arbitrator's award based on the Union's rights under the Agreement only.

**2.** *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347,

4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**3.** Section 11 of the Agreement provides:

*Section 11:* .... To this joint standing committee shall be referred all disputes which may arise as to the construction to be placed upon any clause of the agreement, except as provided otherwise herein, or alleged violations thereof, which can not [sic] be settled otherwise.... Should the Joint Standing Committee be unable to agree, then it shall refer the matter to a board of arbitration....

"forceful evidence" that it retained management rights that would invalidate arbitration in this case. *See id.*

Further, PNI's claim that the Union waived its right to bargain over the changes in manning is incorrect. In making its argument, PNI relies on *NLRB v. Island Typographers, Inc.,* 705 F.2d 44 (2nd Cir.1983). In that case, the union waived its right to bargain over changes because it failed to respond in a timely manner to changes formally proposed by the employer. *Id.* at 48–51. Here, however, the Union responded to PNI's unilateral changes in manning by filing a grievance. This action cannot be interpreted as a waiver of the Union's right to bargain over the changes. Accordingly, the district court's conclusion that the dispute was arbitrable is correct.

### III. The Arbitrator's Award Drew Its Essence from the Agreement.

■ An arbitration award should be upheld as long as it draws its essence from the collective bargaining agreement. *See Enterprise Wheel,* 363 U.S. at 596–99, 80 S.Ct. at 1360–62. In *Stead Motors,* this court determined that an award fails to draw its essence from an agreement only when it ignores the plain language of the contract and "manifestly disregard[s]" the contours of the agreement. 886 F.2d at 1205 n. 6. Moreover, an arbitrator is granted leeway in interpreting a collective bargaining agreement. " '[M]ore than a contract,' the agreement has to be seen as 'a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.' " *Id.* at 1207 (quoting *Warrior & Gulf,* 363 U.S. at 578, 80 S.Ct. at 1351). Although an arbitrator cannot ignore the plain language of a contract, *United Paperworkers Int'l Union v. Misco, Inc.,* 484

U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987), the arbitrator is not bound by the four corners of the document. *See Warrior & Gulf,* 363 U.S. at 581–82, 80 S.Ct. at 1352–53.

■ PNI has not provided sufficient evidence to invalidate the arbitrator's award. In finding that PNI violated sections 2 and 32 of the Agreement [4] by failing to negotiate with the Union over the substantial effects of the manning changes, the arbitrator made a plausible interpretation of the Agreement. *See George Day,* 722 F.2d at 1477. PNI has failed to prove that the arbitrator "manifestly disregarded" the contours of the Agreement. *See Stead Motors,* 886 F.2d at 1205, n. 6. Moreover, PNI's attempt to limit the arbitrator's inquiry only to whether PNI had the right to make manning changes is incorrect. Such a narrow view ignores the fact that PNI's unilateral manning changes altered the bargain that is represented by the Agreement. *See First Nat'l Maintenance Corp. v. NLRB,* 452 U.S. 666, 681–82, 101 S.Ct. 2573, 2582–83, 69 L.Ed.2d 318 (1981) (recognizing that a union must be given an opportunity to bargain over the effects of an economic decision made by a company, even though that decision was within management's discretion). The arbitrator correctly concluded that PNI should bargain over the *effects* of the manning changes. Because PNI has not demonstrated that the arbitrator's award manifestly disregarded the contours of the Agreement, we affirm the district court's finding that the arbitration award drew its essence from the Agreement.

### IV. The Arbitrator's Remedy Exceeded his Authority.

■ Next, we review the propriety of the arbitrator's remedy. Generally, an ar-

---

4. Sections 2 and 32 of the Agreement provide:

*Section 2:* The Employer recognizes the Union as the exclusive bargaining representative of all employees covered by this agreement. The words "employee" and "employees" when used in this contract apply to journeymen and apprentices/trainees. The term "journeymen and apprentices/trainees" shall in no way be understood to apply exclusively to mailer members of the International Brotherhood of Teamsters.

*Section 32:* It is the purpose and intent of the Employer to continue cooperative mutual relations with the Union and to provide the maximum possible Union security to the fullest extent permitted by law. It is the intent of the employer not to undertake any activity which will in any sense undermine or jeopardize [sic] the union's security or the well being of its members....

bitrator's remedy also deserves deference. *See Misco,* 484 U.S. at 38, 108 S.Ct. at 370. In *Stead Motors,* this court stated that "[t]he Court [in the *Steelworkers Trilogy*] was equally categorical in its treatment of judicial second-guessing of the remedy formulated by an arbitrator, stressing the arbitrator's 'need ... for flexibility ...' and the deference to be afforded the arbitrator's use of 'his informed judgment ... to reach a fair solution of a problem.'" 886 F.2d at 1208 (citations omitted). A remedy, however, must still draw its essence from, and is therefore limited by, the collective bargaining agreement. *See Misco,* 484 U.S. at 41, 108 S.Ct. at 372; *Desert Palace, Inc. v. Local Joint Executive Bd.,* 679 F.2d 789, 792–93 (9th Cir.1982).

The arbitrator ordered PNI to commence negotiations with the Union over the "amount of additional hourly compensation due to regular and substitute mailers." The arbitrator retained jurisdiction to determine the amount of "additional compensation" if the parties failed to reach an agreement. Because this remedy creates new bargaining obligations that go beyond the Agreement and that violate the Agreement and the NLRA, we reverse the district court's finding that the remedy was proper.

### A. The Arbitrator's Remedy did not Draw its Essence from the Agreement.

This court defined the extent of an arbitrator's authority to fashion a remedy in *Desert Palace.* "As long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute." 679 F.2d at 793. Judicial review is limited to "whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement." *Id.* The rational relationship between the remedy and the agreement must be "viewed in light of [the agreement's] language, its content, and any other indicia of the parties' intention." *Id.* at 792.

■ The bargaining history of the parties indicates that they would not have necessarily devised a requirement that a new wage rate be imposed for the changes in manning. The arbitrator found that management had "vigorously fought the various attempts of the Union to make manning practices binding." PNI rejected at least three proposals by the Union to incorporate manning practices into the 1979, 1982, and 1985 agreements. PNI also previously made manning changes that the Union never grieved to arbitration. Given PNI's opposition to making manning changes binding, it is unlikely that the parties would have contemplated that manning changes should automatically be remedied by a forced increase in the mailers' wage rate.

The arbitrator's remedy also violates the Agreement's zipper clause. The arbitrator established a new term and condition of employment—"additional hourly compensation"—for which the parties did not bargain. This new term is inconsistent with the Agreement's zipper clause, section 35, that states that the parties have "fully bargained with respect to wages, hours and other terms and conditions of employment and have settled the same for the term of this agreement...." Thus, the arbitrator impermissibly altered the bargaining relationship between PNI and the Union.

■ The district court incorrectly characterized the arbitrator's remedy as "rights" arbitration. Whereas a "rights" arbitrator merely resolves disputes regarding the interpretation of the parties' agreement, an "interest" arbitrator supplements the collective bargaining agreement after the parties have failed to reach an agreement through their own bargaining efforts. *See* Frank Elkouri and Edna Elkouri, *How Arbitration Works* 98–117 (4th ed. 1985). Forcing PNI to bargain with the Union for a higher wage rate, in violation of the Agreement, was improper "interest" arbitration. *See Lodge 802 v. Pennsylvania Shipbuilding Co.,* 835 F.2d 1045, 1046–47 (3d Cir.1987); *see also Leed Architectural Products v. United Steelworkers, Local*

*6674*, 916 F.2d 63, 66 (2d Cir.1990); *Centralab, Inc. v. Local 816*, 827 F.2d 1210, 1213–17 (8th Cir.1987).

The district court incorrectly distinguished *Lodge 802, Centralab,* and *Leed,* stating that the collective bargaining agreements in those cases included clauses prohibiting the arbitrator from altering or modifying the terms of the agreements. First, the district court's position ignores the Agreement's zipper clause. Second, the *Lodge 802, Centralab,* and *Leed* holdings are not premised on the existence of the limiting language. For example, the *Leed* court did not hold that the clause limiting the arbitrator's authority was necessary to its conclusion, but instead stated that the zipper clause was merely a "pragmatic restatement" of Supreme Court case law. *Leed,* 916 F.2d at 66 (citing *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 744, 101 S.Ct. 1437, 1446, 67 L.Ed.2d 641 (1981) ("An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement") and *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361 as the cases that the zipper clause restated).

The district court's reliance on *Local 879, Allied Indus. Workers v. Chrysler Marine Corp.,* 819 F.2d 786 (7th Cir.1987), is misplaced. The district court concluded that *Local 879* upheld an arbitration award imposing new wage rates even though the collective bargaining agreement included a provision limiting the arbitrator's authority to modify wage rates. *Local 879,* however, is inapposite because it involved a severance plan, not a higher wage rate; because the employer did not allege that the arbitrator's award violated the NLRA, *see infra* § IV.B; and because given the fact that the collective bargaining relationship between the parties had ceased at the time of the award, the imposed severance plan could not interfere with the parties' collective bargaining relationship. *See Local 879,* 819 F.2d at 787. Here, the Agreement between PNI and the Union remains effective until September 30, 1993.

The district court also concluded incorrectly that *Desert Palace* justified the arbi-trator's order to negotiate for a higher wage. In *Desert Palace,* this court upheld an arbitrator's modification in the method of compensating casino employees because all three of the contractual terms relied on for such a change in compensation were ambiguous and the "arbitrator's construction of these terms [was] plausible." 679 F.2d at 792. Here, however, there is no contractual ambiguity. Further, the remedy imposed by the arbitrator is not a plausible construction of the Agreement. Section 35 of the Agreement evinces the parties' intent not to negotiate new wage rates during the term of the Agreement. The bargaining history indicates that the parties would not necessarily have contemplated an increased wage rate as a remedy for changes in the manning of the Sheridan. Moreover, the Agreement does not include a wage reopener provision nor does it contain an interest arbitration clause for wage rates.

Based on the parties' bargaining history and section 35 of the Agreement, we find that the arbitrator's remedy was not "rationally derived" from the "general framework or intent" of the Agreement. *See Desert Palace,* 679 F.2d at 793. The arbitrator's remedy was not based on a plausible interpretation of the Agreement, was not within the contemplation of the parties, and was not a fair resolution of the dispute. The arbitrator correctly concluded that PNI violated the Agreement by unilaterally changing the manning practices on the Sheridan. He also correctly ordered the parties to negotiate over the effects of that change. The arbitrator exceeded his authority, however, when he directed the outcome of the negotiation. He should have ordered the parties to bargain over the effects of the manning changes without affirmatively directing that the employees' wages be increased.

## B. *The Arbitrator's Remedy is Inconsistent with the NLRA.*

■ Moreover, the remedy imposed by the arbitrator also violates clear public policy. Judicial deference to an arbitrator's remedy is not required where a remedy violates an explicit, well-defined public poli-

cy. *See W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); *Stead Motors*, 886 F.2d at 1209–12. This exception applies where a public policy: (1) is explicit, (2) is well-defined and dominant, and (3) can be satisfactorily demonstrated by reference to laws and legal precedents, instead of looking only to general considerations of supposed public interest. *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183; *Stead Motors*, 886 F.2d at 1210.

■ The district court erred in not recognizing that the public policy exception defined in *W.R. Grace* applies to this case. The explicit, well-defined, and dominant public policy that the arbitrator's remedy violated is codified in the NLRA at 29 U.S.C. § 158(d) and requires good faith bargaining, not affirmative bargaining:

> [T]o bargain collectively is ... to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, ... *but such obligation does not compel either party to agree to a proposal or require the making of a concession....*

29 U.S.C. § 158(d) (1988) (emphasis added). The arbitrator's remedy violates § 158(d) by requiring PNI and the Union to agree on a higher wage rate.

The district court disregarded the holding in *Ford Motor Co. v. Plant Protection Ass'n Nat'l*, 770 F.2d 69 (6th Cir.1985). In *Ford*, the Sixth Circuit held that an arbitrator exceeded his authority by requiring an employer to "bargain affirmatively" where nothing in the agreement required the employer to bargain on the issue in dispute. *Ford*, 770 F.2d at 75 (explaining that the NLRA requires only good faith bargaining, not affirmative bargaining or bargaining to an agreement). The district court distinguished *Ford* by reading what the arbitrator required of PNI and the Union very narrowly. The district court stated:

> In this case, the arbitrator did not require the parties to come to an agreement; he simply referred the dispute back to the parties for negotiations as he did not at that time have sufficient evidence to make a decision, retaining juris-

diction to impose a new wage rate if the parties failed to agree.

The district court's view is incorrect. The arbitrator's remedy requires PNI and the Union to alter their agreement in a specific manner—by increasing the mailers' wage rate—and that they do so within a sixty day period or the arbitrator will impose a higher wage rate. Absent the arbitrator's order and threatened action, the parties might agree on different, and possibly more equitable, terms than just a higher wage rate. The arbitrator's remedy does not allow PNI and the Union to address creatively the manning changes by bargaining in "good faith." Accordingly, the district court should not have enforced the arbitrator's remedy.

## V. The District Court Erred in Awarding Attorneys' Fees to the Union.

■ Under *Alyeska Pipeline Service Co. v. Wilderness Society*, a prevailing party may be awarded attorneys' fees as an exception to the "American Rule" if the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (citation omitted). One of the central purposes of arbitration proceedings is to achieve speedy and fair resolutions of disputes. In order to serve this purpose, this court has held that "an unjustified refusal to abide by an arbitrator's award may equate [with] an act taken in bad faith, vexatiously or for oppressive reasons." *International Union of Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir.1983). We review the district court's finding of "bad faith" and resulting award of attorneys' fees under a clearly erroneous standard. *See id.*

■ We disagree with the district court's finding that PNI unjustifiably refused to comply with the award. Not only did PNI have a good faith objection to the arbitrator's remedy, it correctly believed that the arbitrator had exceeded his authority. The district court's grant of attorneys' fees was therefore clearly erroneous.

## CONCLUSION

The district court's findings that the dispute was arbitrable and that the award drew its essence from the Agreement are **AFFIRMED.** The district court's finding that the arbitrator's remedy did not exceed his authority is **REVERSED.** The district court's finding that the arbitrator's consideration of the unfair labor practice charge was proper is **VACATED.** The district court's award of attorneys' fees is **RE-VERSED.** Finally, the Union's request for attorneys' fees in connection with this appeal is **DENIED.**