15 F.3d 1084
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 DIRECTORS GUILD OF AMERICA, a labor organization, and the
DGA-Producer Pension Plan and Health & Welfare
Plan, an employee welfare benefit plan,
Plaintiff-Appellant,
v.
HOME BOX OFFICE INC.; Paramount Pictures Corporation;
Tri-Star Picture; Twentieth Century-Fox Film Corporation;
Universal City Studios, Inc., Warner Bros. Inc.; National
Broadcasting Co.; Lorimar Productions Inc.; Columbia
Pictures Industries, Inc., Defendants-Appellees.
 No. 92-56166.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 3, 1994.
Decided Jan. 5, 1994.
 
 1
 Before: GOODWIN and HALL, Circuit Judges, and TANNER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 The Directors Guild of America, Inc. (DGA) appeals the district court's dismissal of its petition to vacate an arbitration decision.
 
 
 4
 The DGA is a labor organization representing directors, associate directors, stage managers and other employees in the movie and television industry. The DGA and defendants are parties to four collective bargaining agreements. These agreements specify a fee schedule for the use of excerpts from television programs and films.
 
 
 5
 One defendant, Home Box Office, Inc., (HBO), contemplated creating a new cable service called "The Comedy Channel." The programming for this channel would include a live video-jockey introducing brief scenes from motion pictures and television programs. The other defendants in this action granted permission to HBO to use clips from the television programs and movies they had produced. HBO also reached agreement with the Writers Guild and the Screen Actors Guild regarding the use of these clips. On March 20, 1989, HBO negotiated a tentative agreement with DGA, but the Director's Council ultimately refused to approve it. This agreement would not have required payment of an excerpt fee to the directors of the clips used on The Comedy Channel.
 
 
 6
 On April 20, 1989, HBO filed a claim for expedited arbitration to determine its obligation to the directors for the use of the excerpts. Through no fault of the parties, that arbitrator did not reach a decision.
 
 
 7
 In November 1989, HBO launched the new channel. On June 20, 1990, DGA filed a claim for arbitration. In April 1991, The Comedy Channel ceased operations. On March 6, 1992, the arbitrator, a professor of law at the University of California at Los Angeles, rendered an opinion finding that defendants had breached the excerpt fee provisions in the collective bargaining agreements but declining to make a damage award based on the specified per use measure. The arbitrator discussed with the parties his willingness to award damages based on other elements of loss actually suffered, but the DGA declined such an award. Accordingly, the arbitrator limited his award to a declaration of the rights of the parties. DGA filed this action to vacate the arbitrator's decision and the district court dismissed the action for failure to state a claim.
 
 
 8
 "[P]ublic policy favors the resolution of labor disputes through arbitration. Accordingly, judicial review of arbitration awards is extremely limited." Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077, 1080 (9th Cir.1993). As a reviewing court, we are "bound--under all except the most limited circumstances--to defer to the decision of [the arbitrator], even if ... that ... decision finds the facts and states the law erroneously." Stead Motors v. Automotive Machinists Lodge 1173, 886 F.2d 1200, 1204 (9th Cir.1989) (en banc), cert. denied, 495 U.S. 946 (1990). In all, our review should respect "the arbitrator's 'need ... for flexibility ..' and the ... use of 'his informed judgment ... to reach a fair solution of a problem.' " Id. at 1208. " 'It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' " Desert Palace, Inc. v. Local Joint Exec. Bd., 679 F.2d 789, 791-92 (9th Cir.1982) (quoting United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960)).
 
 
 9
 This deference limits judicial second-guessing of the remedy formulated by an arbitrator as well. Phoenix Newspapers, 989 F.2d at 1082. The arbitrator's decision in this regard, as with all of his decisions, "must still draw its essence from, and is therefore limited by, the collective bargaining agreement." Id. The remedy created by the arbitrator must reflect a " 'plausible interpretation of the contract.' " Desert Palace, 679 F.2d at 792 (quotation omitted).
 
 
 10
 The arbitrator concluded that the excerpt fee provision of the collective bargaining agreements applied to HBO's use of clips on The Comedy Channel. DGA contends that this decision bound the arbitrator to award the per use fees set forth in those agreements. We disagree and conclude that the arbitrator's award derives from an arguable construction of the bargaining agreements.
 
 
 11
 The arbitrator treated paragraph 2-501 as an overarching provision authorizing the arbitrator to counteract otherwise unjust results.[1] DGA contends that paragraph 2-102, which denies the Arbitrator "the power to vary, alter, modify or amend any of the terms of the [bargaining agreement] ... in making a decision or award," must limit the broad grant of authority in 2-501. The DGA reasons that the arbitrator's construction of these provisions renders 2-102 meaningless. We disagree. Many provisions in the bargaining agreements do not prescribe remedies and thus are unaffected by the broad grant of authority in 2-501 yet safeguarded from modification by 2-102.
 
 
 12
 The DGA also cites many decisions vacating an arbitration decision because the arbitrator disregarded a specific contract provision. Those cases, however, do not discuss the conflict that arises when the bargaining agreement contains a broad remedial provision such as paragraph 2-501. See, e.g., Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077 (9th Cir.1993); United Food & Commercial Workers Union, Local 1119 v. United Markets, Inc., 784 F.2d 1413 (9th Cir.1986); Pacific Motor Trucking Co. v. Automotive Machinists Union, 702 F.2d 176 (9th Cir.1983); Federated Employers v. Teamsters Local No. 631, 600 F.2d 1263 (9th Cir.1979). In this case, the arbitrator exercised his remedial powers consistent with his understanding that the wilfulness of the breach factored into his determination of a remedy.[2] Although the DGA offers numerous plausible interpretations,[3] this court cannot substitute one "plausible" construction for another.
 
 
 13
 The district court's decision is AFFIRMED. Appellees' Request to Take Judicial Notice is DENIED.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Paragraph 2-501 states as follows:
 Authority of Arbitrator The Arbitrator shall have the authority to grant or award one or more of money damages, orders to withdraw, cancel, change or re-do advertising material already issued or prepared, or to require Employer to change or re-do any film titles, or to order back pay or reinstatement, or to order any other reasonable relief the Arbitrator deems appropriate in the circumstances, whether relating to credit on the screen or in advertising or any other arbitrable matter, in the event the Arbitrator finds a breach of the BA or of those provisions of the personal service contract or the deal memo which are subject to arbitration pursuant to the provisions of Paragraph 2-101 hereof.
 
 
 [2]
 The arbitrator determined that section 2-502 required him to consider "wilfulness of the breach." That section provides:
 Consideration for Determining Remedies. In determining the appropriate remedy, the Arbitrator shall take into account such evidence as may be adduced by the claimant of similar prior violations by the respondent. The Arbitrator shall also take into account evidence of failure on the part of the claimant to notify the respondent promptly of the violation, and evidence of inadvertent breach.
 
 
 [3]
 The DGA would construe paragraph 2-501 as granting the arbitrator broad remedial authority only when the agreements do not specify exact relief. The DGA also perceives paragraph 2-501 as a general provision that must be limited by the specific terms governing excerpt fees