59 F.3d 174
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 COMMUNICATIONS WORKERS OF AMERICA, Plaintiff-Appellant,
v.
GTEL CORPORATION, Defendant-Appellee.
COMMUNICATIONS WORKERS OF AMERICA, Plaintiff-Appellee,
v.
GTEL CORPORATION, Defendant-Appellant.
 Nos. 93-56659, 93-56660.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 2, 1995.
Decided June 12, 1995.
 
 Appeals from the United States District Court, for the Central District of California, D.C. No. CV-93-02121-WDK-G; William D. Keller, District Judge, Presiding.
 C.D.Cal.
 VACATED IN PART, MODIFIED AND AFFIRMED.
 Before: BEEZER and TROTT, Circuit Judges, and BURNS, District Judge.*
 MEMORANDUM**
 Communications Workers of America ("CWA") appeals the district court's grant of summary judgment partially enforcing and partially vacating an arbitration award in its favor. GTEL cross-appeals, seeking to correct what it describes as a mistake in the district court's order. We have jurisdiction over appeals of a district court's grant of summary judgment confirming or vacating a labor arbitrator's award. 29 U.S.C. Sec. 185(a); 28 U.S.C. Sec. 1291. We agree with GTEL and vacate that part of the district court's opinion containing the mistake. In all other respects, we affirm.
 * On March 15, 1991, GTEL[1] announced its intention to lay off a number of its Communications Specialists ("Tech I's") and Senior Communications Specialists ("Tech III's"). Under the terms of Article IX of the collective bargaining agreement ("CBA") between the CWA and GTEL, management was permitted to conduct layoffs "[w]henever economic or force conditions ... warrant." The CBA also provided that "[e]mployees shall be laid off in inverse order of total Company seniority." GTEL determined that for the purpose of calculating seniority Tech I's and Tech III's would be treated as two separate classifications. Thus, approximately half of the layoff notices were sent to Tech I's and the other half were sent to Tech III's.
 One week later, GTEL also announced plans to engage in a force realignment. Article VIII of the CBA provided for seniority as the method for deciding which employees were to be selected for reassignment.
 Ultimately, on May 15, 1991, GTEL laid off 47 Tech I's and Tech III's.[2] GTEL had already reassigned at least 33 Tech I's and Tech III's while retaining five less senior Tech I's and Tech III's. CWA had, in the interim, filed a series of grievances pursuant to the CBA with different arbitrators regarding GTEL's actions. Although CWA sought to have all grievances presented to a single arbitrator, GTEL refused.
 CWA filed the first grievance with Arbitrator George Marshall, contending that GTEL violated the CBA by retaining less senior Tech I's while laying off more senior Tech III's. On March 2, 1992, Arbitrator Marshall agreed with CWA on the merits. Marshall determined that because the two groups performed similar work, the CBA did not permit GTEL to treat the different classifications of technicians separately for seniority purposes. Arbitrator Marshall added that an appropriate remedy was to "make all [Tech III's] who were improperly laid off and not afforded their seniority rights whole."
 CWA's second grievance was filed with Arbitrator R. Douglas Collins. The union challenged GTEL's reassignment of the 33 employees, mostly Tech III's, while retaining 5 Tech I's and less senior Tech III's during the force realignment process. On April 17, 1992, Arbitrator Collins found GTEL in violation of the CBA for exempting the junior employees from the realignment process. He directed that the force realignment be redone, but first remanded the dispute to the parties for negotiation. Arbitrator Collins retained jurisdiction to order or direct a remedy at a later date if the parties were unable to resolve the dispute.[3]
 On October 26, 1992, Arbitrator Marshall held a hearing to determine an appropriate remedy for the improperly conducted layoffs. GTEL submitted a Declaration from Human Resources Director Sandra Roach, which contained a list of 34 of the 47 laid off Tech I's and Tech III's who, GTEL claimed, were the most junior and would have been laid off even if GTEL had used a consolidated seniority list. GTEL requested that only the remaining 13 employees, all Tech III's, who were improperly laid off be reinstated, and that no remedial measures were necessary for the other 34.
 On March 5, 1993, Arbitrator Marshall issued a remedy award requiring GTEL to reinstate all the laid off workers, both Tech I's and Tech III's, and make them whole with respect to lost wages, benefits and seniority. Additionally, notwithstanding Arbitrator Collins' separate proceeding addressing the force realignment, the remedy award from Arbitrator Marshall required GTEL to reinstate to their original positions and make whole with back pay and benefits the 33 employees who were force realigned at approximately the same time as the layoffs. Finally, the remedy award instructed GTEL to follow the CBA when making future layoffs or force realignments.
 CWA sought to enforce the Marshall arbitration award in an action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Sec. 185. It also sought prejudgment interest from the date of the remedy award. GTEL filed a counterclaim seeking to vacate the arbitration award either in whole or in part. Both parties moved for summary judgment.
 The district court entered an order vacating portions of the award and enforcing the remainder. Two vacated provisions of the arbitrator's award are at issue here. First, the court vacated the award restoring all laid off workers to their former positions. Instead, the court concluded that only those employees who would otherwise not have been laid off should be reinstated. Second, the court vacated in its entirety the arbitrator's award of reinstatement to the 33 employees who were force realigned, concluding that the arbitrator had no authority to provide a remedy for those workers because their case was being decided in a separate arbitration proceeding. No prejudgment interest was awarded.
 II
 GTEL initially challenges our appellate jurisdiction, arguing that the district court's order is not final because a separate judgment has not yet been entered in compliance with Federal Rule of Civil Procedure 58. We disagree. The existence of a properly entered separate judgment is not a necessary prerequisite to appellate jurisdiction. Vernon v. Heckler, 811 F.2d 1274, 1276 (9th Cir.1987). Dismissing this appeal and returning the matter to the district court for entry of a separate judgment in accordance with Rule 58 would be a pointless exercise. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 385 (1978) (per curiam) ("Wheels would spin for no practical purpose"). We decline to do so here.
 III
 We review de novo a grant of summary judgment. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 Reviewing a labor arbitrator's award is an extremely limited venture. Stead Motors v. Automotive Machinists Lodge No. 1173, 886 F.2d 1200, 1207-08 (9th Cir.1989) (en banc), cert. denied, 495 U.S. 946 (1990). "The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence" from the collective bargaining agreement. Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442, 901 F.2d 1494, 1496 (9th Cir.1990) (citations omitted). As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, a court should not overturn the decision simply because it disagrees with factual findings, contract interpretation, or choice of remedies. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987).
 We have articulated three exceptions to the general principle of deference to an arbitrator's decision. Van Waters & Rogers Inc. v. International Bhd. of Teamsters, Local Union 70, 913 F.2d 736, 739 (9th Cir.1990). These exceptions apply: "(1) when the arbitrator's award does not 'draw its essence from the collective bargaining agreement' and the arbitrator is dispensing 'his own brand of industrial justice'; (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy." Id. (quoting Federated Dep't Stores, 901 F.2d at 1496 (citations omitted)).
 IV
 CWA argues that the district court erred in vacating the portion of the arbitrator's award that ordered GTEL to reinstate all laid off employees with full back pay and benefits. CWA contends that the choice of remedy is within the discretion of the arbitrator, and as long as the arbitrator is arguably interpreting the collective bargaining agreement, that remedy should be upheld.
 While we are hesitant to disturb an arbitration award, we will do so where the award does not draw its essence from the CBA. To consider whether an award draws its essence from the CBA, "[we] must ensure that the arbitrator looked to the words of the contract and to the conduct of the parties." Michigan Mutual Ins. Co. v. Unigard Security Ins. Co., 44 F.3d 826, 831 (9th Cir.1995) (quoting Edward Hines Lumber Co. v. Lumber & Sawmill Workers Local No. 2588, 764 F.2d 631, 635 (9th Cir.1985)).
 In Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077, 1082-83 (9th Cir.1993), we defined the extent of an arbitrator's authority to fashion a remedy. As long as a "plausible solution" is available in the framework of the CBA, the arbitrator can determine what the parties would have agreed to. Id. Judicial review is limited to "whether the arbitrator's solution can be rationally derived" from the general framework of the CBA. Id. (internal quotations omitted).
 In our judgment, the remedy ordered by Arbitrator Marshall is not rationally derived from the CBA. It is undisputed that GTEL is vested with broad discretion to reduce its work force to the extent it deems necessary. The only restriction the CBA placed on the company was that layoffs had to proceed on the basis of total companywide seniority. Arbitrator Marshall determined, and GTEL concedes, that the group of 47 Tech I's and Tech III's laid off was not determined properly. GTEL presented to the district court a list of the 47 Tech I's and Tech III's who were least senior based on the proper classification (the Roach Declaration). CWA offered no evidence to rebut GTEL's showing that 34 of the 47 laid off employees would also have been laid off under the consolidated seniority list.[4]
 Article XIII of the CBA provides that the "arbitrator shall have no authority to change, add to, or subtract from this Agreement, or to designate monetary award(s) beyond that to make the employee whole with respect to basic (lost) wages." Arbitrator Marshall's award did add to the CBA by awarding back pay and reinstatement to employees who suffered no damage as a result of GTEL's failure to conduct layoffs by total seniority. This result is inconsistent with the company's right to lay off workers at a time when it deemed necessary.
 The remedy ordered by Arbitrator Marshall cannot be construed as even arguably interpreting the contract. Those employees who would have been laid off in any event are not merely made whole by back pay, they are awarded a substantial windfall.[5] Arbitrator Marshall was not vested with the authority to modify or add to the CBA in this manner.
 The CBA at issue in this case makes no provision for punitive damages. "Generally, the remedy for breach of a collective bargaining agreement is limited to an award of compensatory damages." Desert Palace, Inc. v. Local Joint Exec. Bd., 679 F.2d 789, 794 (9th Cir.1982). To be compensatory, there must be "a causal relationship between the company's violation of the agreement and the loss claimed by the employee." Howard P. Foley Co. v. IBEW, Local 639, 789 F.2d 1421, 1423 (9th Cir.1986), overruled on other grounds by Pullman Power Prods. Corp. v. Local 403, 856 F.2d 1211, 1212 (9th Cir.1988). An award exceeding the monetary loss that the injured party suffered as a causal result of the contract breach is considered punitive. Desert Palace, 679 F.2d at 794 (citing Westinghouse Elec. Corp. v. IBEW Local 1805, 561 F.2d 521, 523-24 (4th Cir.1977)).
 The award of damages in this case does not draw its essence from the CBA because that agreement's essence does not contemplate the type of quasi-punitive damages awarded by Arbitrator Marshall. Although Marshall did not term the award punitive, it bears no causal relationship to the actual loss of the 34 employees who would have been laid off under any circumstances. Indeed, the district court cited an arbitration treatise as support for the opposite proposition. "[M]onetary damages in arbitration should normally correspond to specific monetary losses suffered.... Thus, for example, where an employer violates the agreement by utilizing junior employees, damages will be due only to those employees whose seniority would have entitled them to the work had the employer acted in accordance with the agreement." Frank Elkouri and Edna Elkouri, How Arbitration Works 401-02 (4th ed. 1985).
 Not only is Arbitrator Marshall's remedy award inconsistent with the essence of the CBA, it is inconsistent with his own award of March 2, 1992 resolving the merits of the grievance. Arbitrator Marshall initially stated, after agreeing with CWA that GTEL should have used a combined seniority list of Tech I's and Tech III's, that the "appropriate remedy is to make all Senior Communication Specialists [Tech III's] who were improperly laid off and not afforded their seniority rights whole." (emphasis added).
 In his remedy award, Arbitrator Marshall ignored this restriction in two respects. First, he ordered GTEL to reinstate Tech III's who were properly laid off under either the initial list or the consolidated list. Also, Arbitrator Marshall awarded reinstatement and back pay to at least 24 Tech I's who were, under either list, properly laid off. According to his own construction of the scope of the remedy, it was to include only Tech III's. Any reinstatement and back pay for Tech I's bears no relation to Arbitrator Marshall's own instructions or to the CBA.
 Finally, the remedy award is inconsistent with the grievance report filed by CWA. The initial grievance stated that GTEL had violated Article IX of the CBA (relating to layoffs) by "laying off Tech III['s], who have more seniority than Tech I['s], who they kept on the payroll." There is no indication that the union sought a remedy for Tech I's who were laid off, yet Arbitrator Marshall reinstated with back pay at least 24 Tech I's despite the fact that they would have been laid off under any scenario.
 CWA raises two theories for why the arbitrator's award should be upheld. Neither has merit. First, CWA speculates that Arbitrator Marshall was arguably construing the contract to be read that if one junior employee was improperly retained, all senior employees laid off should be fully compensated. Notwithstanding the fact that Arbitrator Marshall never explicitly interpreted the CBA in this way, it is not a plausible reading. The CBA provides for an employee to be made "whole" with lost wages. An employee who lost no wages as a result of the wrongful layoff is not due back pay simply because the company violated some provision of the CBA. Thus, even if Arbitrator Marshall's award was based on that reasoning, it would not draw its essence from the CBA.
 CWA's second argument is that Arbitrator Marshall might have rejected, or at least questioned, the accuracy of the Roach Declaration. This argument is wholly speculative, because Arbitrator Marshall mentioned no such concern. We decline to uphold an arbitrator's award based on such an implausible hypothesis.
 Although an arbitrator's award is not to be disturbed lightly, it ought not to be enforced blindly. Here, the award by Arbitrator Marshall of reinstatement and back pay for all 47 laid off employees does not draw its essence from the CBA. Thus, we agree with the district court that it should be vacated.
 V
 CWA also argues that the district court erred in vacating that portion of the arbitrator's award relating to reinstatement of the workers reassigned as a result of the force realignment. Again, we agree with the district court that this part of the award should be vacated.
 
 
 1
 The arbitration proceedings were never consolidated. An arbitration proceeding should not be consolidated in the absence of express agreement. Weyerhaeuser Co. v. Western Seas Shipping Co., 743 F.2d 635, 637 (9th Cir.1984) (case involving Federal Arbitration Act), cert. denied, 469 U.S. 1061 (1984). Thus, each separate arbitration proceeding had to move forward independently. Arbitrator Marshall exceeded his authority by granting relief to a separate group of grievants.
 
 
 2
 Although CWA points to places in the record of the arbitration hearing where references to the force realignment are made, the totality of the record indicates that Arbitrator Marshall was only vested with the authority to decide the fate of the laid off workers. CWA's initial grievance mentioned only the layoffs. The March 2, 1992 initial award from Arbitrator Marshall indicated that the proper remedy was to make Tech III's who "were improperly laid off" whole. Nowhere are the realigned workers mentioned until the remedy award.
 
 
 3
 While it is true that we will treat with great deference an arbitrator's interpretation of the scope of issues presented to him, Federated Dep't Stores, 901 F.2d at 1498, an arbitrator cannot be given unfettered deference. Obviously, an arbitrator does not have authority to bind the parties by "deciding issues not submitted by the parties." Wren v. Sletten Constr. Co., 654 F.2d 529, 533 (9th Cir.1981). Here, the union chose to pursue separate grievances regarding the layoffs and the force realignment. Arbitrator Collins had already issued an award indicating that the force realignment might need to be redone, but he first ordered the parties to negotiate. The record does not indicate the progress of that proceeding. Regardless of the course of the Collins Arbitration, Arbitrator Marshall exceeded his authority by ordering a remedy in the force realignment action.
 
 VI
 
 4
 CWA argues lastly that it was entitled to an award of prejudgment interest. The district court did not address this issue, but CWA argues we should resolve it. This we decline to do.
 
 
 5
 GTEL and CWA stipulated that if they were unable to agree on any specific remedies under the district court's order, and if the disputed issue was not specifically addressed by the district court, "the parties agree that any such matters may be submitted to a neutral arbitrator." We leave the parties to negotiate or arbitrate the issue at their discretion.
 
 VII
 
 6
 GTEL also appealed the district court's order, seeking correction of a mistake pursuant to Fed.R.Civ.P. 59(e). GTEL requests that we exercise jurisdiction to correct the mistake. GTEL argues that it would have raised this issue in a Fed.R.Civ.P. 59(e) motion in the district court, but was prevented from doing so as a result of CWA's premature appeal before the issuance of a separate judgment.
 
 
 7
 The district court, when it listed the employees who should receive no reinstatement or back pay because they would have been laid off even if GTEL had used the combined seniority list, mistakenly omitted several employees, specifically Numbers 15-17 and 20 from Arbitrator Marshall's list. GTEL correctly points out that its statement of uncontroverted facts includes the correct list of employees. CWA offered no evidence to counter this list. When the Roach Declaration is cross-referenced with Arbitrator Marshall's list, it is clear that GTEL is correct. Because we believe it would serve no purpose to remand this matter to the district court, we will vacate the erroneous portion of the district court's order, and modify it as set forth below.
 
 
 8
 We modify the district court's order as follows: On page 17, line 18, the words "numbered 14., 18., and 22. through 49." are stricken, and replaced with "numbered 14. through 18., 20., and 22. through 49."
 
 
 9
 VACATED in part, MODIFIED and AFFIRMED.
 
 
 
 *
 The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 GTEL, a subsidiary of the GTE Corporation, was erroneously sued as GTEL Corporation. We will refer to it as GTEL
 
 
 [2]
 The current status of three other employees who were laid off is disputed, and was not considered by the district court in its summary judgment order. Two of these three employees were apparently rehired by GTEL. The other employee's status is disputed. These three employees, numbers 2, 19, and 50 on Arbitrator Marshall's list for reinstatement, are not subject to our jurisdiction, and we will not address them further
 
 
 [3]
 A third grievance involving GTEL's protection from layoff or reassignment of less senior employees working on a specific project is not at issue in this appeal
 
 
 [4]
 While we recognize CWA's argument that other factors could conceivably affect the layoff calculus, there is no evidence that the Roach Declaration was an inaccurate designation of who would be laid off under proper seniority
 
 
 [5]
 We have examined other labor arbitrations, and the closest analogous case supports GTEL's position. In George A. Hormel & Co. v. United Food & Commercial Workers Int'l Union, District Local 431, 85 Lab.Arb (BNA) 1069, 1069-72 (1985) (Miller, Arb.), an employer improperly retained less senior employees during a layoff in contravention of the collective bargaining agreement. The arbitrator's award ordered the employer to reinstate and pay back pay to three employees who should have been retained. Id. at 1073. However, the arbitrator gave no remedy to two other senior employees who "would not have been retained regardless of whether the Company" had adhered to the agreement. Id. The arbitrator added that "they are not an affected employee and are not entitled to any award of back pay." Id. The same rationale applies here