**The CASE–HOYT CORP., Plaintiff,**

**v.**

**GRAPHIC COMMUNICATIONS INT'L UNION LOCAL 503, Defendant.**

**No. 96–CV–6284L.**

United States District Court,
W.D. New York.

March 18, 1997.

Nicholas Fiorenza, Ferrara, Fiorenza, Larrison, Barrett & Reitz, P.C., East Syracuse, NY, for Case–Hoyt Corp.

James R. LaVaute, Blitman & King, Syracuse, NY, for Graphic Communications Int'l Union Local 503.

### DECISION AND ORDER

LARIMER, Chief Judge.

This is an action, brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate an arbitration award on the ground that the arbitrator exceeded his contractually limited authority. Plaintiff, Case–Hoyt Corporation ("Case–

Hoyt" or "Company"), moves for summary judgment, vacating the award. Defendant, Graphic Communications International Union Local 503 ("Union"), cross-moves for summary judgment, confirming the award.

## FACTS

### A. Background

Case–Hoyt, a printing and packaging company, has been plagued with serious financial problems for several years. In response to these problems, the Company permanently laid off twenty-one employees from its Sheetfed Pressroom in 1989. Additional employees were laid off in 1990 from its Web Pressroom. Despite these layoffs, the Company continued to suffer severe financial problems, causing it to close one of its facilities in 1993. Case–Hoyt was then purchased by its present owner in an attempt to save the Company. In the fall of 1993, a restructuring and downsizing plan was implemented. As a result of this plan, Case–Hoyt laid off an additional nineteen employees. It is these 1993 layoffs that are at issue in the instant action.

Article 8, Section 6 of the collective bargaining agreement between the Company and the Union provided that: "Relative ability to do the work shall be the determining factor in deciding which employees shall be laid off in the Department. If abilities are equal, then seniority within the department shall prevail."

Carolyn Cotton, Manager of Human Resources for Case–Hoyt, met with the individual supervisors to discuss the layoff selection process. Cotton told the supervisors that they must judge the "relative ability" of each employee in their department to determine who would be laid off. Cotton explained to the supervisors her understanding of "relative ability." Supervisors were not instructed to use any particular system in determin-

ing layoffs, but were to use their independent judgment, after discussions with subordinate supervisory personnel. Ultimately, the following criteria were used in making the 1993 layoff determinations: job skills, attendance, safety records, leadership, team work, and initiative.

The Union filed grievances on behalf of the employees who had been laid off. The Union maintained that the Company violated the collective bargaining agreement by laying off employees with more seniority than those retained. The grievances eventually were submitted to arbitration.

### B. Arbitrator's Decision

On May 8, 1996, the arbitrator, Jeffrey M. Selchick, Esq., issued an award, finding that the Company had violated the collective bargaining agreement with respect to seventeen of the nineteen employees involved in the arbitration.[1] The arbitrator ordered these employees reinstated with back pay.

In his decision, the arbitrator analyzed the relevant issues in terms of two separate grievances that had been filed: (1) a grievance on behalf of sixteen employees who were laid off from the Sheetfed Pressroom; and (2) a grievance on behalf of Ed Strader who was laid off from the Pre Press Department.

#### 1. Grievance Involving Employees in the Sheetfed Pressroom

The overriding issue with respect to these employees was the language of Article 8, Section 6 of the collective bargaining agreement: "Relative ability to do the work shall be the determining factor in deciding which employees shall be laid off in the Department. If abilities are equal, then seniority within the department shall prevail."

In the arbitrator's view, the language of this provision was somewhat ambiguous.

---

1. It is those 17 employees who are at issue in the present action, namely Gerald Beikirch, Richard Florack, Anthony Giudici, Bruce Hanat, Gerald Hayes, Douglas Hunter, Gerald Kennard, Roy Keppen, Wencelado Moreno, Robert Perkins, William Relyea, Daniel Rischenole, Milton Ritzenthaer, Mark Smith, Ed Strader, Lawrence Wurme, and Arthur Yockel. The other two em-

ployees, Ronald Florack and Ron Ramsey, are not involved in the instant action. Ronald Florack settled his dispute with the Company during the course of the arbitration. Ron Ramsey was found by the arbitrator to have been properly discharged and the Union has not challenged this finding.

The arbitrator interpreted the provision and concluded that "[b]ecause this is a layoff clause, and because this decision to eliminate positions was motivated by outside economic forces and not employee performance, ... the second sentence creates a presumption that seniority shall control as long as abilities are equal...." Arbitrator's Decision at 20. According to the arbitrator, "[w]here the Company lays off a more senior employee, the Company must provide convincing objective evidence that the junior employee was superior in performance, attendance, and productivity." *Id.* at 25.

The arbitrator determined that the Company had not engaged in a proper "relative ability" analysis and produced convincing objective evidence of the junior employees' superior abilities. According to the Company, all employees were good employees who had already survived a layoff. In fact, the Company was forced to make "fine distinctions" between the employees to determine who would be laid off. Ultimately, based on his interpretation of the provision, the arbitrator found that if only "fine distinctions" could be made, then seniority should control.

### 2. Grievance Involving Ed Strader

The grievance brought on behalf of Strader involved different circumstances. In 1983, Strader and other Camera Department employees were transferred into the Off Press Proof Department, and new hires were made. On October 20, 1983, the Union and the Company signed a side-letter agreement concerning the creation of this department, which provided a lower starting wage rate for new hires and retained the then-current wage rate for more senior employees, including Strader. Paragraph 4 of the side-letter reads: "It is understood that 'new hires' mentioned above cannot replace any present Pre Press Department employee except by just cause firing, death, resignation, withdrawal or retirement."

The arbitrator found that the Company had breached this side-letter agreement with respect to Strader when he was laid off in the Fall of 1993 and, essentially, replaced by new employees who had been hired since 1983.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994). Here, the parties agree that there are no material issues of fact in dispute and that resolution of the motions depends entirely on a legal determination of whether the arbitrator's award should be vacated or confirmed.

### B. Standard of Review of an Arbitrator's Award

██ "For purposes of avoiding industrial strife, settled national policy holds that voluntary arbitration under a collective bargaining agreement is the preferred method of resolving disputes between labor and management." *Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union Local 261*, 950 F.2d 95, 98 (2d Cir.1991) (citing *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 565, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 577–78, 80 S.Ct. 1347, 1350–51, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)). Courts, therefore, "play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

██ "An arbitrator's decision is entitled to substantial deference, and the arbitrator need only explicate his reasoning under the contract 'in terms that offer even a barely colorable justification for the outcome reached' in order to withstand judicial scrutiny." *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir.1988) (quoting *Andros Compania Maritima, S.A. and Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting

within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. at 38, 108 S.Ct. at 371; *Hygrade Operators, Inc. v. Local 333, United Marine Div.*, 945 F.2d 18, 22 (2d Cir.1991). In fact, " '[t]he court is forbidden to substitute its own interpretation even if convinced that the arbitrator's interpretation was not only wrong, but plainly wrong.' " *Local 1199 v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir.1992) (quoting *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir.1991)). "[C]onfirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *Andros Compania Maritima, S.A. and Marc Rich & Co.*, 579 F.2d at 704.

■■■ "Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. Further, an arbitrator "may not shield an 'outlandish disposition of a grievance' from judicial review 'simply by making the right noises—noises of contract interpretation.' " *Leed Architectural Prods., Inc. v. United Steelworkers of America, Local 6674*, 916 F.2d 63, 65 (2d Cir.1990) (quoting *In re Marine Pollution Serv., Inc.*, 857 F.2d at 94 (quoting *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 187 (7th Cir.1985))).

### 1. Grievances Involving Employees in the Sheetfed Pressroom

■■■ My task with respect to this grievance is to determine whether the arbitrator, in fact, interpreted an arguably ambiguous contract provision or administered his own brand of industrial justice. *See Local 1199 v. Brooks Drug Co.*, 956 F.2d 22, 26 (2d Cir.

1992). While I find that this is a close case, the judicial deference accorded to an arbitrator's award mandates confirmation of the award.

Here, the arbitrator's opinion, when taken in its entirety, may be read "as embodying a construction of the agreement itself, perhaps with the arbitrator looking to 'the law' for help in determining the sense of the agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597–98, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

The arbitrator determined that the language of Article 8, Section 6 was somewhat ambiguous. He proceeded to interpret the provision in light of two critical factors that were present. The first factor was that the decision to eliminate positions by layoff here was motivated by economic forces and not employee performance. The second factor was that all the employees were good employees who had already survived one layoff and who could only be differentiated by "fine distinctions." The arbitrator interpreted the language "[i]f abilities are equal, then seniority within the Department shall prevail" to require approximate or near equality in ability and not exact or absolute equality. Accordingly, under this arbitrator's interpretation, if only "fine distinctions" could be made between the employees, then their "relative abilities" were approximately equal and seniority should control. This is one plausible interpretation of the agreement's ambiguous language. Essentially, the arbitrator harmonized the two competing interests of "relative ability" and "seniority" in light of the circumstances present.

Further, although the collective bargaining agreement provided that "relative ability to do the work" shall be the determining factor for layoffs, it did not set forth either the criteria for determining "relative ability" or the standard of proof that would be required of the Company. Certainly, both of these determinations were within the province of the arbitrator to determine. *See Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 2515, 135 L.Ed.2d 203 (1996). Therefore, the arbitrator was acting within his authority when he concluded that

"[w]here the Company lays off a more senior employee, the Company must provide convincing objective evidence that the junior employee was superior in performance, attendance, and productivity." Arbitrator's Decision at 25.

Finally, the arbitrator's conclusion that the Company had not engaged in a proper "relative ability" analysis was based on the Company's failure to produce any evidence indicating the superior qualifications of those less senior employees who were retained. Without such objective evidence, the arbitrator was unable to ensure that management acted reasonably, without discrimination, and in good faith.

Certainly, the arbitrator's interpretation of the relevant clause, on these facts, is not the only logical interpretation. Another arbitrator might have reached a contrary conclusion. In fact, had this case been submitted to the Court for *de novo* review, I may have reached a different result. For example, I think that the language "[i]f abilities are equal, then seniority within the Department shall prevail" could be interpreted to require absolute equality before seniority even comes into play. Arguably, "fine distinctions" between employees, based on criteria deemed important by the Company, was precisely what the contract anticipated. In other words, one employee's abilities may be relatively better than another's, even if both are good employees. However, the standard of review in this case is not *de novo*. The Company and the Union did not bargain for my interpretation; they bargained for the arbitrator's interpretation—an interpretation that I am neither entitled nor inclined to second guess. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 765, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). This court has no business overruling an arbitrator because its interpretation of the contract is different from his. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361–62.

For all these reasons, the arbitrator's decision with respect to the grievance involving employees in the Sheetfed Pressroom must be confirmed. There is adequate support in the arbitrator's opinion to conclude that the award draws its essence from the collective bargaining agreement.

### 2. Grievance Involving Ed Strader

I find that the grievance involving Ed Strader is more straightforward. Here, the arbitrator clearly was construing the contract and acting within the scope of his authority. The side-letter agreement, in paragraph one, provides a starting pay rate for "new hires." In paragraph two, the agreement states that the pay rate of employees already assigned to the Off Press Proofing facility, including Strader, would not be reduced. Paragraphs one and two, therefore, distinguish between "new hires" and "present employees," with Strader specifically included in the latter category. The side-letter agreement provides further, in paragraph four, that "[i]t is understood that 'new hires' mentioned above cannot replace any present Pre Press Department employee except by just cause firing, death, resignation, withdrawal or retirement." The arbitrator's conclusion that new hires in the Off Press Proofing Department since 1983, who survived the instant round of layoffs, replaced Strader in violation of this agreement is certainly a reasonable interpretation of the agreement's language.

Accordingly, the arbitrator's decision with respect to Strader's grievance draws its essence from the side-letter agreement and must be confirmed.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment, vacating the arbitration award, is denied, and defendant's cross-motion for summary judgment, confirming the award, is granted.

IT IS SO ORDERED.